UNITED STATES of America

v.

Glen D. MORGAN, Appellant.

UNITED STATES of America

v.

John R. GARNER, Jr., Appellant.

Nos. 87–3089, 87–3091.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 17, 1989.

Decided Sept. 14, 1990.

Dennis M. Hart, Washington, D.C. (appointed by the court), for appellants.

Lisa Prager, Asst. U.S. Atty., of the bar of the New York Court of Appeals, pro hac vice, by special leave of court, with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before BUCKLEY and WILLIAMS, Circuit Judges, and ROBINSON, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM.

Shortly after arriving at Union Station by train from Miami, Glen D. Morgan and John R. Garner Jr. were approached by drug interdiction agents. One of the agents conducted a consensual pat-down search of Garner, which led to the discovery of a baggage claim check in his back pocket. Both suspects denied owning either the claim check or the bag to which it corresponded. The agents retrieved the bag, opened it, and discovered about thirteen pounds of marijuana. After a trial in the United States District Court for the District of Columbia (Oberdorfer, J.), Morgan and Garner were found guilty of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1988). On appeal, they argue that the officers' search violated the Fourth Amendment, that the judge misconstrued the element of constructive possession and wrongly instructed the jury on it, and that the

evidence was insufficient to support Garner's conviction. Finding the contentions without merit, we affirm both convictions.

## I. BACKGROUND

After their indictment on July 16, 1987, appellants Morgan and Garner filed motions to suppress physical evidence and statements. A suppression hearing on August 25, 1987, revealed the following facts, all uncontested except as noted.

On June 17, 1987, Amtrak Police Special Agent Robert John Sauve examined the passenger manifest of train No. 98, which was traveling from Miami to Union Station in Washington, D.C. Sauve noted that one of the passengers, Glen Morgan, had paid for two one-way tickets with cash and failed to leave a call-back number—behavior that fit a drug-courier profile. Subsequently, Amtrak police received a call from Metro Dade Police in Miami describing two men who had behaved suspiciously before boarding train No. 98. When the train reached Union Station on June 18, Agent Sauve and Drug Enforcement Administration Special Agent Kenneth R. Rosel watched passengers disembark.

Recognizing Garner and Morgan from the Miami descriptions, the agents followed the men to the baggage claim area and watched as Morgan handed Garner "a small white card" that appeared to be a baggage claim check. Morgan went to the men's room and then walked toward the building's exit, while Garner waited at the baggage claim area. Agent Sauve approached Morgan, identified himself as a police officer, and asked if they could talk. Morgan agreed. In response to questions, Morgan said that he had no identification, that the second train ticket in his possession was his girlfriend's, and that he was not waiting for anyone. Asked if he was waiting for luggage, Morgan said nothing.

Agent Sauve saw Garner approaching. Sauve asked Garner if they could talk, and Garner, like Morgan, agreed. In response to questions, Garner said repeatedly that he had no baggage check. To prove the point, Garner spontaneously emptied his

front pockets of cigarettes, a lighter, and a few dollar bills. Those items, he said, were all he had on him. Agent Sauve asked if he was sure. Garner said he was. Agent Sauve asked, "Do you mind if I pat you down?" Garner replied, "Okay." Testimony of Special Agent Robert John Sauve, Hearing Tr. at 20 (Aug. 25, 1987). (At the suppression hearing, counsel argued that Garner had not consented to the pat-down, but no evidence was introduced to support the point.) Agent Sauve felt a flexible piece of cardboard in Garner's back pocket. The agent removed what turned out to be a baggage claim check and asked Garner what it was. Garner replied: "It's not mine. I don't know what's happening." *Id.*

While Agent Sauve questioned and searched Garner, Agent Rosel approached Morgan, and, as Agent Sauve had before, asked whether he would be willing to talk to him. Morgan said he would. In response to questions, Morgan said that he did not know Garner and that they had never spoken to each other. He also stated that the second train ticket in his possession belonged to his girlfriend, that she had left the train earlier, and that he did not know precisely where she had gotten off. The agent asked to examine the black leather tote bag Morgan was carrying, and Morgan consented. Inside the bag, the agent found clothing, airline tickets, plastic trash bags, and baby powder. During the questioning, the agents spoke in a quiet tone of voice, displayed no weapons, and did not tell the suspects that they were required to answer questions.

The agents asked the men to accompany them to the baggage claim area, and the suspects complied. There, Garner and Morgan both denied ownership of the suitcase whose tag matched the claim check. After trying unsuccessfully to secure a drug-detecting dog, the agents consulted an Assistant United States Attorney, who advised them that under the circumstances the luggage was abandoned and could be opened without a warrant. Inside the suitcase, the agents found several plastic bags. Some contained clothing, and at least one contained what proved to be marijuana.

Surrounding the plastic bags was a sweet-smelling white powder that appeared to be baby powder. The plastic bags and the powder appeared identical to the items in Morgan's tote bag. The agents placed Garner and Morgan under arrest.

The trial judge admitted the baggage claim check, the suitcase, and the marijuana in evidence. The judge excluded the statements made by the defendants after the agents asked them to go to the baggage window, on the ground that the defendants were no longer free to leave. At trial, both agents repeated their narratives of the events leading up to the arrest, and two experts testified about the marijuana. The defendants presented no evidence. The jury found both men guilty.

## II. DISCUSSION

### A. Search and Seizure

Appellants argue that the baggage claim ticket and, consequently, the suitcase containing marijuana were inadmissible as products of an illegal search and seizure. We disagree.

■ To begin with, no Fourth Amendment seizure occurred when the agents approached appellants and asked them questions. Wherever its precise boundaries may lie, a seizure requires more than the initial encounter detailed in this record: officers who, displaying no weapons and speaking in a normal tone of voice, approach individuals in a public place and ask permission to talk with them. *See, e.g., United States v. Smith,* 901 F.2d 1116, 1118 (D.C.Cir.1990); *United States v. Maragh,* 894 F.2d 415, 418–19 (D.C.Cir.1990); *United States v. Lloyd,* 868 F.2d 447, 450–51 (D.C.Cir.1989).

■ Garner, furthermore, consented to the pat-down search that led to the discovery of the claim ticket. Consensual searches do not fall within Fourth Amendment strictures. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The consent must of course be voluntarily given, and voluntariness is gauged in light of the to-

tality of circumstances. *See Lloyd,* 868 F.2d at 451. The circumstances here lack most of the factors that point to coercion, such as " 'aggressive questioning, intimidating actions, or prolonged police presence.' " *Id.* (quoting *United States v. Brady,* 842 F.2d 1313, 1315 (D.C.Cir.1988)). We see no basis for ruling that the trial judge's finding of voluntariness was clearly erroneous, as we would have to do in order to overturn it. *See Lloyd,* 868 F.2d at 451.

■ Appellants also suggest that the search exceeded the bounds of consent. According to this argument, Garner may have consented to the pat-down search, but not to the removal of the ticket from his pocket. We find nothing in the record to suggest that Garner's consent was so limited. He knew that the object of the search was the baggage ticket, and, moments earlier, he had emptied his front pockets in order to show that he did not have it. In this context, Garner's consent to the search indicates, as the trial court ruled, that "he wanted the agents to see everything he was carrying." Trial Tr. at 27 (Aug. 26, 1987). In any event, this court has held that a consensual search is not "a game of 'Mother-may-I,' in which [the officer must] ... ask for new permission to remove each article." *United States v. Battista,* 876 F.2d 201, 207 (D.C.Cir.1989). We conclude that Garner's consent extended to the removal of the claim check from his back pocket.

## B. Constructive Possession

At the close of trial, the court charged the jury that it could find the defendants in constructive possession of the marijuana if it found that they knowingly possessed the baggage claim check and intended to exercise dominion and control over the suitcase. In instructing the jury, the court stated:

> A person who although not in actual possession knowingly has both the power and the intention at a given time and place to exercise ... dominion and control over a thing[,] either directly or ... by possession of a document which at a given time entitles the bearer to pos-

sess[ion] of the thing[,] is then in constructive possession of it.

Trial Tr. at 12 (Aug. 27, 1987) (afternoon session).

Appellants assert that by giving such an instruction, the court in effect directed a verdict for the government on the possession issue. They also challenge the evidence supporting the finding of constructive possession, and they appear to dispute the assumption that possession of a baggage claim check could ever demonstrate constructive possession of the baggage, arguing that the holder of a claim check can obtain the baggage "only under certain limited circumstances."

■ We find no error here. The court correctly explained to the jury that possession of a controlled substance may be either actual or constructive, and that constructive possession may be shown through evidence that a person knowingly was in a position to exercise dominion and control over the contraband. *See, e.g., United States v. Lawson,* 682 F.2d 1012, 1017 (D.C.Cir.1982). Contrary to appellants' contention, the court did not in essence direct a verdict, because the instructions expressly left to the jury the questions of whether appellants knowingly possessed the claim check and whether they intended to exercise dominion and control over the suitcase. Moreover, we think it eminently reasonable for a jury to conclude that someone can obtain baggage merely by presenting the claim check to the custodian. No circumstances in this case would have prevented appellants from doing so (absent, of course, the intervention of drug agents). We thus cannot conclude that the court's instruction would have led the jury to find appellants guilty under an improper legal theory or that it was otherwise unfairly prejudicial. *See, e.g., United States v. Lemire,* 720 F.2d 1327, 1339–40 (D.C.Cir. 1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984).

■ We also find that the evidence supported a finding of constructive possession. In reviewing the sufficiency of evidence supporting a conviction, we examine the record in the light most favorable to the

government. *See, e.g., United States v. Laing,* 889 F.2d 281, 286 (D.C.Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1306, 108 L.Ed.2d 482 and — U.S. ——, 110 S.Ct. 1790, 108 L.Ed.2d 792 (1990). Here, the jury was presented with testimony that Morgan and Garner were traveling together, that there was one suitcase in their constructive possession, that they exchanged a baggage claim check, and that their actions were consistent with those of travelers awaiting baggage upon arrival at a station. We cannot say that a reasonable jury must necessarily have entertained reasonable doubt on this question.

### C. Sufficiency of the Evidence to Convict Garner

Appellant Garner raises a separate contention, arguing that his "momentary" possession of the baggage claim check and his mere presence at the baggage claim area were insufficient evidence to support his conviction. Once again, we must examine the record in the light most favorable to the government. Doing so, we find ample support for Garner's conviction. There was evidence that Garner was traveling with Morgan, that Garner approached the baggage claim area and appeared to be waiting to retrieve baggage, and that he lied about possessing the claim check, thus evidencing consciousness of guilt. In sum, not only the possession of the ticket, but also the entire sequence of Garner's actions supported a reasonable inference that he knew of the tainted suitcase and that he intended to exercise control over it.

### III. CONCLUSION

We conclude that the district court properly denied the motion to suppress the baggage claim check, as appellants' initial encounter with the drug agents did not amount to a seizure and Garner consented to the search that revealed the claim check. We also find no error in the court's instruction on constructive possession and conclude that the evidence was sufficient to support both convictions. As we find no

merit to any of appellants' other claims, the convictions are

*Affirmed.*