**UNITED STATES of America**

v.

**Alfonso P. SAMUELS, Appellant.**

**No. 90–3069.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 7, 1991.

Decided June 21, 1991.

As Amended July 26, 1991.

Roy W. Krieger (appointed by this court), Washington, D.C., for appellant.

Sylvia Royce, Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before SILBERMAN, BUCKLEY and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The government charged appellant Alfonso P. Samuels with possessing five grams or more of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a), (b)(1)(B)(iii) (1988). Samuels moved to suppress evidence as the fruit of an illegal search and seizure. Following a suppression hearing, the district court denied the motion, whereupon Samuels entered a conditional plea of guilty. In sentencing Samuels, the court departed upward from the imprisonment range prescribed under the Federal Sentencing Guidelines on the ground that Samuels' criminal history category did not adequately reflect the seriousness of his past criminal conduct. We affirm the district court's denial of the motion to suppress, but we reverse the sentence because it is based on a misinterpretation of the Guidelines.

## I. BACKGROUND

At approximately 7:20 a.m. on November 4, 1989, Samuels arrived at the Greyhound/Trailways station in the District of Columbia by bus from New York City. Carrying a plastic drawstring bag, he entered the station to wait for a connecting bus to Richmond, Virginia. Inside, he was approached by Sergeant John Brennan of the Metropolitan Police Department's Narcotics Interdiction Unit. Sergeant Brennan showed his identification folder, said he was a police officer, and asked to speak with Samuels.

The officer inquired if Samuels had arrived on the New York bus, and Samuels said he had. The officer asked whether he had a ticket, and Samuels handed him a ticket from New York to Richmond. Sergeant Brennan returned it and asked if Samuels had any identification. Samuels said no.

The officer then asked whether Samuels was carrying narcotics, and Samuels said

he was not. Sergeant Brennan asked if he could search the plastic bag. Samuels replied, "Yes," and handed him the bag. Sergeant Brennan opened it and discovered a paper bag containing crack cocaine, numerous plastic vials, and razor blades. Samuels was placed under arrest.

At the time of the encounter, Sergeant Brennan was dressed in plain clothes, his gun was concealed, and he did not display his badge. He spoke in a normal tone of voice and did not touch Samuels until the arrest. A second officer, also in plain clothes, acted as a back up and stood five to seven feet behind Samuels.

After the officers had arrested him but before they had advised him of his rights, Samuels asked for a photograph of his son that Sergeant Brennan had removed from the plastic bag. The photograph was returned to him at the station house.

At the suppression hearing, Sergeant Brennan testified to the facts described above. Samuels, on the other hand, testified that he had been closely surrounded by three officers at the bus station and that he had not given permission to search the bag. He also testified that he had recognized Sergeant Brennan and the others as police officers because of the handcuffs hanging out from under the backs of their jackets.

The district court credited Sergeant Brennan's testimony that the officers did not impede Samuels or hinder his ability to walk away during the encounter. The court concluded that the encounter did not amount to a seizure, and that Samuels had voluntarily spoken with the officers and had voluntarily consented to the search. The court specifically rejected as not credible Samuels' testimony that Sergeant Brennan had grabbed the bag and searched it without consent.

Following the denial of his motion to suppress, Samuels entered a conditional guilty plea and proceeded to sentencing. Pursuant to the Guidelines, the probation officer calculated seven criminal history points, based on Samuels' prior convictions in New York for sexual abuse, robbery, and a minor transit violation, and based on the fact that Samuels was on probation at

the time of his Washington arrest. Under the Guidelines, seven points placed Samuels in criminal history category IV, which, because his total offense level was twenty-four, resulted in a prescribed imprisonment range of seventy-seven to ninety-six months. *See* United States Sentencing Commission, *Guidelines Manual* Ch. 5, Pt. A, at 5.2 (Nov. 1990) ("U.S.S.G.").

Not included in the calculation of Samuels' criminal history category were five additional convictions, also in New York, for robbery, petit larceny, and criminal possession of a weapon. The probation officer could not count these convictions because they were for offenses committed when Samuels was under eighteen years old, and because, according to the probation officer, none of them resulted in a sentence meeting the criteria set forth in section 4A1.2(d) of the Guidelines, which are summarized below at pages 8–9. *See id.* § 4A1.2(d), (e)(3), (4). The presentence report, however, urged the court to consider a departure from the prescribed range under section 4A1.3(a) on the ground that category IV did not adequately reflect the seriousness of Samuels' past criminal conduct because of the five uncounted prior convictions. *See id.* § 4A1.3(a).

At sentencing, the district court reviewed Samuels' entire criminal record, beginning with a robbery conviction at age fourteen, and characterized it as "atrocious." Transcript of Sentencing Hearing, Mar. 26, 1990, at 6. The court was "amazed" that Samuels had received a sentence of only eighty-five days for the sexual abuse conviction, *id.*, and noted that Samuels' criminal record was "an extremely long one," and that he was "very fortunate" to have received no sentence longer than six months, *id.* at 10. Considering Samuels' "extensive record, and the fact that ... both as a juvenile and as an adult" the courts had shown him "every leniency," the court stated:

> I must conclude that the criminal history [category] in this case does not accurately reflect the sentence that should be imposed ..., and, in fact, in looking at the sentence that can be imposed in this case, as I understand it, the probation

office was unable to count several of the convictions listed against [Samuels], and therefore under section 4A1.3 of the Sentencing Guidelines, I propose to depart from the guideline range and to make a departure upward to the next criminal history category.

*Id.* at 10. Under criminal history category V, the prescribed imprisonment range for Samuels' offense level is ninety-two to 115 months. *See* U.S.S.G. Ch. 5, Pt. A, at 5.2. The district court sentenced him to 115 months in prison and four years of supervised release.

## II. DISCUSSION

### A. Suppression Issues

■ Samuels' suppression arguments do not require lengthy analysis. The testimony accepted by the district court established that no seizure occurred until after the officers discovered drugs in Samuels' possession. Until that point, Sergeant Brennan's conversation with Samuels was consensual and nonthreatening. The officer, dressed in plain clothes, approached Samuels in a public place, identified himself, and asked nonintrusive questions in a conversational tone. Under the Fourth Amendment, this sort of police-citizen encounter need not be justified by articulable suspicion. *See United States v. Morgan,* 914 F.2d 272, 274 (D.C.Cir.1990) (per curiam); *United States v. Smith,* 901 F.2d 1116, 1118 (D.C.Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 172, 112 L.Ed.2d 136 (1990); *United States v. Maragh,* 894 F.2d 415, 418 (D.C.Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 214, 112 L.Ed.2d 174 (1990).

Samuels' claim of seizure rests largely on his version of the facts. But the district court credited Sergeant Brennan's testimony that Samuels was free to break off the conversation and walk away. We have no reason to question the court's determination of credibility. *See* Fed.R.Civ.P. 52(a).

■ According to Samuels, the officers' handcuffs were visible beneath their jackets. Although the visibility of handcuffs, like the display of a uniform, a badge, or a gun, is relevant to whether an encounter

with police constitutes a seizure, *see United States v. Lewis*, 921 F.2d 1294, 1297 (D.C.Cir.1990); *United States v. Tavolacci*, 895 F.2d 1423, 1425 (D.C.Cir.1990) (opinion for a divided panel), the passive display of handcuffs, by itself, is not a sufficient show of authority to cause a reasonable, law-abiding person to believe his liberty is being restrained. *Cf. United States v. Lloyd*, 868 F.2d 447, 450–51 (D.C.Cir.1989). Absent aggravating circumstances, it is not objectively intimidating or coercive for plainclothes officers to carry handcuffs on their belts.

■ Nor is it constitutionally significant that Samuels was approached while waiting for a connecting bus to Richmond. An ordinary and consensual encounter in a public place is not transformed into a seizure merely because it occurs during an intermediate stopover. The police did not intrude upon Samuels' "liberty interest in proceeding with his itinerary," *United States v. Place*, 462 U.S. 696, 708, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983); their brief conversation with him in the waiting room did not interfere with his travel plans. *See Tavolacci*, 895 F.2d at 1428. It was the subsequent discovery of narcotics that disrupted those plans.

■ Similarly, we will not overturn the district court's finding that Samuels voluntarily consented to the search. When Sergeant Brennan asked if he could look in the bag, Samuels said yes and handed it over. The circumstances do not indicate that this consent was other than freely given. *See Morgan*, 914 F.2d at 274–75; *United States v. Brady*, 842 F.2d 1313, 1315 (D.C. Cir.1988). Again, Samuels testified to the contrary, but the district court did not find his testimony credible. We cannot say that this evaluation of his demeanor was clearly erroneous. *See Brady*, 842 F.2d at 1315.

■ Lastly, Samuels argues that the district court should have suppressed his post-arrest statement as the product of an improper custodial interrogation. While waiting in a squad car before receiving his *Miranda* warnings, Samuels, according to his own testimony, said to the officers, "Excuse me, can I have—I have a picture

of my son inside the bag. Can I have the picture, please?" Transcript of Suppression Hearing, Jan. 11, 1990, at 49. He now contends that this statement was made only after he saw one of the officers remove the photograph from his bag. He argues that the officer's action was the "functional equivalent" of interrogation under *Rhode Island v. Innis*, 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

Contrary to Samuels' assertion, the record reveals that he volunteered the statement without prompting from the police. Such spontaneous statements are admissible without *Miranda* warnings. *United States v. Gonzalez*, 875 F.2d 875, 881 (D.C.Cir.1989); *see Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). Moreover, removing the photograph from the bag was not the functional equivalent of questioning because the officers would not have known that such action "was reasonably likely to elicit an incriminating response" from Samuels. *Innis*, 446 U.S. at 302, 100 S.Ct. at 1690.

### B.  Sentencing

■ A district court may depart from the prescribed imprisonment range only if it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (1988). Whether the Commission adequately considered a circumstance depends entirely on the Guidelines, policy statements, and official commentary. *Id.* We have plenary review over the interpretation of the Guidelines. *See id.* § 3742(e)(2); *United States v. Burke*, 888 F.2d 862, 865 (D.C.Cir.1989).

■ Samuels argues that the Commission adequately considered the significance of prior juvenile sentences, and that juvenile sentences that are not includable in the criminal history calculation under section 4A1.2(d) may not be the basis for a departure under section 4A1.3. *See U.S.S.G.* §§ 4A1.2(d), 4A1.3. Subject to the two ex-

ceptions expressly stated in the Guidelines, we agree.

Under section 4A1.2(d), offenses committed when the defendant was under eighteen contribute to the criminal history calculation only if the defendant (1) received a sentence for such offense within five years of the current offense, or (2) was sentenced to confinement of at least sixty days and was released within five years of the current offense, or (3) was convicted as an adult and received a prison sentence exceeding one year and one month. *Id.* § 4A1.2(d). Under section 4A1.2(e), any prior sentence for offenses committed as a juvenile that does not fall within these time periods is not counted. *Id.* § 4A1.2(e)(3), (4).

Samuels was twenty-three at the time he was arrested for the present offense, and, according to the probation officer, none of his five under-eighteen convictions had resulted in a sentence within the applicable time periods. (The presentence report indicates, however, that on May 21, 1984, Samuels received concurrent six-month sentences for two of those convictions, both for petit larceny. If he served the full six months, he would have been released from confinement on or about November 21, 1984—within five years of his November 4, 1989, arrest for the instant offense. In that case, these two sentences would each add two points to his criminal history calculation. *See id.* § 4A1.2(d)(2)(A). We cannot tell whether in fact Samuels served less than the full six months, but because the government agreed with the criminal history calculation, we will assume that the probation officer properly disregarded the petit larceny convictions.)

Application Note 7 states the reason for disregarding sentences outside the time periods: "Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records." *Id.* § 4A1.2, commentary (n.7). This reasoning suggests that nonincludable juvenile offenses should not trigger a departure under section 4A1.3, which provides in pertinent part that prior sentences not counted

toward the criminal history category may support a departure only if "reliable information" concerning the prior sentences indicates that the category is understated. *Id.* § 4A1.3, .3(a). Given the inconsistencies in record keeping noted by the Commission, permitting courts to base departures on the existence of "reliable" juvenile records would plainly exaggerate the sentencing disparities that section 4A1.2(d) is meant to curb.

Application Note 8 verifies this general rule by carving out two precise exceptions:

> If the government is able to show that a sentence imposed outside [the] time period [fixed by section 4A1.2(d)(2) and (e)] is evidence of [1] similar misconduct or [2] the defendant's receipt of a substantial portion of income from criminal livelihood, the court may consider this information in determining whether to depart and sentence above the applicable guideline range.

*Id.* § 4A1.2, commentary (n.8). The government did not argue and nothing in the record indicates that either exception applies here.

In providing for departures on the basis of prior sentences "not used in computing the criminal history category," section 4A1.3 gives two examples: "sentences for foreign and tribal offenses." *Id.* § 4A1.3(a). Significantly, the provisions in section 4A1.2 that exclude foreign sentences and tribal court sentences from the criminal history calculation both declare that such sentences nevertheless "may be considered under § 4A1.3." *Id.* § 4A1.2(h), (i). The same declaration is made with respect to expunged convictions. *Id.* § 4A1.2(j). Such a declaration, however, is conspicuously absent from the discussion of under-eighteen convictions in section 4A1.2(d).

■ Section 4A1.3 provides that a departure may be justified where the defendant had previously received an extremely lenient sentence for a serious crime. *See id.* § 4A1.3. Therefore, the district court could properly consider the apparent leniency of the sentence Samuels had received for his prior adult conviction for

sexual abuse. We do not, however, interpret section 4A1.3 to allow consideration of the leniency of prior juvenile sentences that could not be used in computing the criminal history category. The background commentary to section 4A1.3 indicates that leniency is often a factor "in the case of younger defendants (*e.g.,* defendants in their early twenties or younger) who are more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants." *Id.* § 4A1.3, commentary (background). We read this policy statement as applying only to lenient sentencing for offenses committed as an adult or for juvenile offenses that fall within the applicable time periods. To apply a general concern about leniency to all juvenile sentences would undo the careful measurements set down in section 4A1.2(d)(2).

On the record of the sentencing hearing, we cannot discern the extent to which the district court based its decision to depart on Samuels' inapplicable juvenile convictions. Although the court also considered legitimate factors, it is evident that these juvenile convictions and the perceived leniency of the sentences imposed for them played a role in the decision. Accordingly, we remand for a new sentencing hearing. We need not reach Samuels' argument that his sentence was greater than necessary to comply with the purposes of punishment, in violation of 18 U.S.C. § 3553(a), or his argument that the district court violated due process and Fed.R.Crim.P. 32 by failing to give him sufficient notice of its intent to depart.

### III. CONCLUSION

We have no cause to upset the district court's ruling on Samuels' motion to suppress. His conviction therefore stands. The district court, however, improperly considered prior juvenile convictions in departing from the prescribed sentencing range, and so we reverse the sentence and remand for a new sentencing hearing. The judgment of the district court is

*Affirmed in part, reversed in part, and remanded.*