### UNITED STATES of America

### v.

### Francisco Martin DURAN, Defendant.

### Crim. No. 94–447 (CRR).

United States District Court, District of Columbia.

March 16, 1995.

Leigh A. Kenny, Federal Public Defender for the District of Columbia, Washington, DC, for defendant.

Eric A. Dubelier, and Brenda Jene Johnson, U.S. Attorney's Office, Washington, DC, for the U.S.

## ORDER

CHARLES R. RICHEY, District Judge.

Before the Court are the Defendant's Motion to Suppress Statements and the Government's Opposition thereto. The Court held a hearing on said Motion on March 14, 1995. Upon careful consideration of the pleadings, the oral argument of counsel, the relevant law, and the entire record herein, the Court finds that the Defendant's Motion to Suppress Statements shall be granted in part, and denied in part, as hereinafter provided.

## BACKGROUND [1]

On October 29, 1994 at approximately 3:00 p.m., the Defendant allegedly fired numerous rounds of ammunition from a Norinco SKS semiautomatic weapon in the vicinity of the White House. A tourist tackled the Defendant as he tried to reload his weapon. Officers from the United States Secret Service then subdued the Defendant and arrested him. The Secret Service recovered the Norinco SKS semiautomatic weapon from the Defendant.

On the scene after the Defendant was subdued, one of the civilians who tackled the Defendant thanked Secret Service Officer Carl Persons for not firing his service weapon while the civilians attempted to wrestle the Defendant to the ground. Apparently in response to this conversation between the officer and the civilian, the Defendant interjected that he wished the Secret Service officers had shot him.

At approximately 3:20 p.m., after the Defendant was taken to a nearby guard house on the White House grounds, Secret Service Special Agent Mark Marek orally advised him of his *Miranda* rights. The Defendant indicated that he understood those rights and did not make any statements. Later, at approximately 6:45 p.m., Special Agent Ramirez again advised the Defendant of his *Miranda* rights, and the Defendant signed a "Warning of Rights" form and indicated his desire for an attorney.

---

1. At the March 14, 1995 hearing, counsel represented that the parties concede to the relevant facts for purposes of this Motion.

At 9:00 p.m., while the Defendant was awaiting transport to a holding facility, Special Agent John Barry asked the Defendant how he was feeling, whether he needed anything, and whether he would like to telephone his wife. The Defendant declined, and in response to further inquiry by Special Agent Barry, the Defendant made a series of statements about the events in front of the White House earlier that day. The Defendant also advised Special Agent Barry that he wanted to tell his attorney what happened, then fell silent.

### DISCUSSION

The Defendant requests that the Court suppress the statement made to Officer Persons to the effect that he wished the Secret Service Officers had shot him, as well as the statements the Defendant made to Special Agent John Barry. As grounds therefor, the Defendant argues that the statement to Officer Persons was both involuntary and made in response to a custodial interrogation before any *Miranda* warnings were given. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). With respect to the statements made to Special Agent John Barry, the Defendant asserts that the same must be suppressed because all questioning should have ceased after he invoked his rights, including the right to counsel, and because the statements were made involuntarily. Moreover, the Defendant argues that any use of his statement indicating his desire to speak to a lawyer would amount to an impermissible comment on his constitutional right to counsel.

In Opposition, the Government contends that *Miranda* does not require suppression of the Defendant's statement to Officer Persons and others on the scene, as it was spontaneously made and not the result of a custodial interrogation. The Government concedes that the statements made to Special Agent Barry "may technically run afoul of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)," which precludes government agents from reinitiating a conversation with a suspect once he has invoked the right to counsel, but states that the Government may seek to introduce these statements for impeachment purposes in the event the Defendant testifies. Opposition at 3–4. Finally, the Government argues that the Defendant's statements to Special Agent Barry, along with his statement to Agent Persons, were voluntarily made such that admission of the same would be consistent with due process.

### A. BECAUSE THE DEFENDANT'S STATEMENT TO OFFICER PERSONS WAS NOT MADE IN RESPONSE TO POLICE INTERROGATION, THE DEFENDANT'S REQUEST TO SUPPRESS THAT STATEMENT IS DENIED

For *Miranda* to apply, a suspect must be in custody and subject to interrogation. *See Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. In *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980), the Supreme Court defined custodial interrogation as "express questioning or its functional equivalent," including those "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Accordingly, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [*Miranda*]." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1629–30. Here, while it is undisputed that the Defendant was in custody at the time he made the statement to Officer Persons that he wished the Secret Service Officers had shot him, the Court cannot find that the Defendant was interrogated, and *Miranda* does not apply. *See* Opposition at 4.

While the Defendant agrees with these principles, he asserts that his "statement that he wished Officer Persons would have shot him occurred in response to Officer Persons' conversation with a civilian witness," and should therefore be suppressed as involuntarily made. Motion at 10. This representation, however, supports just the opposite conclusion, namely, that his statement was not the result of an interrogation but, rather, a voluntary, spontaneous response to the civil-

ian's comment expressing appreciation that Officer Persons did not fire his weapon. Moreover, the Defendant's general assertion that "[m]any agents arrived in front of the White House to arrest Mr. Duran, then immediately asked questions of him (such as his identity)" does not alter the analysis, where there is no allegation of express questioning of the Defendant that led to the statement. Motion at 10. Indeed, the Government cites to a string of cases where various courts, including the Supreme Court and the Court of Appeals for this Circuit, found no interrogation under circumstances much more suspect than those at bar. Opposition at 5–7. *See, e.g., Innis,* 446 U.S. at 303, 100 S.Ct. at 1690–91 (no interrogation where defendant volunteered to locate a hidden gun after overhearing police officers discussing among themselves the risk that a handicapped child might find the weapon); *United States v. Samuels,* 938 F.2d 210, 214 (D.C.Cir.1991) (no interrogation where officers could not have reasonably expected defendant to confess upon seeing the officers in possession of a photograph of his son); *United States v. Hackley,* 636 F.2d 493, 498 (D.C.Cir.1980) (officer's question to defendant of "what he was going to do" with respect to the robbery did not constitute interrogation). Accordingly, the Court finds that, because the Defendant's statement to Officer Persons was not made in response to police interrogation, the Defendant's request to suppress that statement shall be denied.

### B. *THE STATEMENTS MADE TO SPECIAL AGENT BARRY AFTER THE DEFENDANT INVOKED HIS MIRANDA RIGHTS MUST BE SUPPRESSED*

■ The Government concedes, as it must, that under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the statements made by the Defendant after invoking his right to counsel must be suppressed. Opposition at 3–4. "[U]nless the accused himself initiates further communication, exchanges, or conversations with the police," no further interrogation may occur without counsel. *Edwards,* 451 U.S. at 485, 101 S.Ct. at 1885. The Government thus represents that it will not seek to introduce

the Defendant's statements to Special Agent Barry in its case-in-chief, but advises that it may seek to introduce these statements for impeachment purposes in the event the Defendant testifies. Opposition at 4. *See generally Michigan v. Harvey,* 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990) (statements made in violation of prophylactic *Miranda* rules, though inadmissible in the prosecution's case-in-chief, are admissible to impeach conflicting testimony by the defendant).

### C. *THE COURT FINDS THAT THE DEFENDANT'S STATEMENTS TO OFFICER PERSON AND SPECIAL AGENT BARRY WERE MADE VOLUNTARILY AND ARE THUS NOT INADMISSIBLE ON THAT GROUND*

■ The Defendant's statements to Special Agent Barry, all of which must be suppressed under *Miranda* and *Edwards,* may nonetheless be admitted for impeachment if the Government establishes that they were voluntary by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972). The same holds true with respect to the use of the Defendant's statement to Officer Persons. Upon consideration of the evidence presented at the hearing, and the pleadings extant, the Court finds that the Government has met its burden of proving that the Defendant's statements were voluntary.

"A confession is inadmissible as a matter of due process if under the totality of the circumstances it was involuntarily obtained (for example, if the police beat a confession out of an individual after he validly waives his *Miranda* rights)." *United States v. Bradshaw,* 935 F.2d 295, 299 (D.C.Cir.1991). A confession is unconstitutionally involuntary if "it is precipitated by *police* coercion, for there cannot be a due process violation unless there is some form of state action." *Id.* (emphasis in original) (citing *Colorado v. Connelly,* 479 U.S. 157, 163–67, 107 S.Ct. 515, 519–22, 93 L.Ed.2d 473 (1986)). "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal

defendant of due process of law." *Connelly,* 479 U.S. at 164, 107 S.Ct. at 520.

Under the totality of the circumstances, the Court cannot find such police coercion here. The Defendant asserts that his first statement to Officer Persons and others "was made while he was surrounded by numerous federal agents, once civilians had tackled him to the sidewalk." Motion at 8. However, arresting a suspect following gunfire at the White House is hardly police coercion; the Secret Service Officers were merely doing their job. *Id.* Thus, under *Connelly,* the Defendant's claim that the statement to Officer Persons was involuntary is wholly without merit.

With respect to the statements made to Special Agent Barry, the Defendant argues that the six to eight hours that elapsed between the time the events occurred at the White House and the time the statements were made, coupled with the questioning following invocation of *Miranda* rights and the imputed knowledge of the Defendant's alleged mental problems, constituted coercion which rendered the statements involuntary. The Court cannot agree. Under *Connelly,* there is no evidence before the Court that the delay was coercive or that during that time he was subjected to any coercive police behavior. Nor does the violation of *Miranda,* though clear, necessarily imply that the statement resulted from police coercion. *Miller v. Dugger,* 838 F.2d 1530, 1537 (11th Cir.), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988).

Finally, the Defendant argues that, by virtue of the offense and a note recovered from his person during a search incident to arrest, Special Agent Barry must have been alerted to the Defendant's "serious mental problems." Motion at 8. However, mental condition, "by itself and apart from its relation to official coercion," does not dispose of the voluntariness inquiry. *Connelly,* 479 U.S. at 164, 107 S.Ct. at 520. And here, there is simply no evidence on the record of police coercion that exploited the Defendant's alleged mental problems. *See Miller,* 838 F.2d at 1537. Although Special Agent Barry's statement regarding the incident cannot in any way be condoned, the Court cannot find

that the Defendant's response was involuntary, particularly in view of his subsequent indication of his wish to consult a lawyer and his eventual silence.

Accordingly, it is, by the Court, this 15 day of March, 1995,

ORDERED that the Defendant's Motion to Suppress Statements shall be, and hereby is, GRANTED in part and DENIED in part, as hereinafter provided; and it is

FURTHER ORDERED that the Defendant's statements to Special Agent Barry on October 29, 1995 shall be, and hereby are, EXCLUDED from the Government's case-in-chief and unless and until the Defendant testifies, in accordance with *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); and it is

FURTHER ORDERED that the Defendant's Motion to Suppress his statement to Officer Persons following his arrest shall be, and hereby is, DENIED.