UNITED STATES of America,

v.

Sean TUTEN, Defendant.

No. CR. 02–426(RJL).

United States District Court, District of Columbia.

July 10, 2003.

### MEMORANDUM OPINION
### AND ORDER

LEON, District Judge.

The defendant has moved to suppress evidence seized from and statements made by the defendant upon his arrest on September 21, 2002. Upon consideration of the motions, the opposition thereto, the evidence presented at the hearing, and for the following reasons, the Court denies the defendant's motions to suppress the evidence and statements.

### I. Background

Sergeant Reginald Powell of the Metropolitan Police Department credibly testified to the following unrebutted facts: At 7:46 pm on the evening of September 21, 2002, Sergeant Powell and approximately nine other officers were driving in three unmarked cars in the 1200 block of Otis Place, NW, in Washington, DC. Tr. of Mot. Hr'g at 10. It was getting dark; street and house lights were turned on. *Id.* at 36. Sergeant Powell and the other officers were wearing plain clothes with raid jackets bearing their badges and clearly marked in yellow with "Metropolitan Police Department." *Id.* at 11. The officers were on patrol in that area because of complaints about illegal drug traffic. *Id.* at 10.

As his unmarked cruiser entered the 1200 block of Otis Place, Sergeant Powell observed a black man, wearing a gray shirt and black jeans, standing in the mouth of an alley about eight feet from the officers. *Id.* at 11. The defendant looked in the direction of the cars, brought his right hand to rest on his waist area, and turned slowly away from the cars. Sergeant Powell, who has training in gun recognition, believed that the defendant was carrying something in his waistband and, with the car windows down, communicated through his radios to the other officers that "he is either dirty or he has something." *Id.* at 13–14. When the officers stopped their cars and began to exit, the defendant fled down the alley. *Id.* at 12. At that point, the officers gave chase all the while commanding of the defendant: "Stop, Police, Stop." *Id.* at 15.

The defendant, who was running "aggressively," repeatedly looked back at the officers behind him and kept his right hand clasped against his waist area. *Id.* at 15–16. Immediately before Officer Kevin Davis tackled the defendant in the rear yard of 3622 11th Street, NW, Sergeant Powell observed the defendant pull a shiny, dark object from his waist area. *Id.* at 16, 19. The object was dislodged from the defendant's hand upon impact with Officer Davis. *Id.* at 19. Sergeant Powell

went to where the object was dropped and found a nine millimeter handgun. *Id.* at 16–17, 19. The officers arrested the defendant and called for a transport vehicle. As the defendant was being walked to the transport vehicle, the defendant stated loudly and clearly several times: "You are not going to get any prints off of it." *Id.* at 20.

The defendant was charged with one count of unlawful possession of a firearm and ammunition by a person convicted of crime punishable by imprisonment for one year or more in violation of 18 U.S.C. § 922(g)(1). On January 23, 2003, the defendant filed motions to suppress evidence and statements, and the Court held an evidentiary hearing on June 23, 2003.

## II. Discussion

The defendant contends that the Court should suppress the gun because the officers had no justification chasing and arresting the defendant and should suppress the defendant's statements because they were giving involuntarily and under duress. I disagree. The Court denies the defendant's motions to suppress because the officers observed the gun in plain view while chasing the defendant, the officers had reasonable suspicion to conduct an investigatory stop, and the defendant's statements were spontaneous.

### A. Motion to Suppress Evidence

■ The seizure of the defendant here did not occur until Officer Davis tackled the defendant, *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (finding that Fourth Amendment seizure does not take place until the defendant submits to a show of authority),[1] at which time the officers had reasonable suspicion for an investigatory stop and even probable cause for arrest after viewing the gun in plain view. As the officers were chasing the defendant, attempting to stop him to conduct a brief investigation, the defendant pulled a gun from his waistband. Sergeant Powell, who was well-positioned to view the defendant during the chase, observed the gun before the defendant was seized by Officer Davis. Because the officers observed the gun in plain view, they had constitutional authority to seize the gun as well as probable cause to arrest the defendant. *Horton v. California,* 496 U.S. 128, 134, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

■ Even if the officers had not observed the gun *before* the defendant was seized, Sergeant Powell and the other officers had ample reason to initiate an investigatory stop of the defendant because the "totality of the circumstances," *United States v. Edmonds,* 240 F.3d 55, 59 (D.C.Cir.2001), created reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The defendant was located in a high-crime area, made "furtive" gestures by turning away, and fled "aggressively" in response to the police presence. *See Illinois v. Wardlow,* 528 U.S. 119, 123–24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (finding that high-crime area and unprovoked flight are considerations for reasonable suspicion); *Ed-*

---

1. In *Hodari D.,* officers wearing police jackets were patrolling a high-crime area in an unmarked car, when they saw four or five youths gathered around a parked car. *Id.* at 622, 111 S.Ct. 1547. Upon seeing the officers, the youths took flight. *Id.* at 623, 111 S.Ct. 1547. The officers gave chase and witnessed Hodari toss crack cocaine off to the side just as one of the officer's was on top of him. *Id.* The Supreme Court ruled that the officers' pursuit constituted a "show of authority" and since Hodari "did not comply with that injunction he was not seized until he was tackled." *Id.* at 629, 111 S.Ct. 1547. The abandoned drugs, the Court held, were "not the fruit of a seizure." *Id.*

*monds,* 240 F.3d at 60 (identifying high-crime area, furtive gestures, and flight as three of four factors that contributed to reasonable suspicion).[2] Although the officers were in unmarked cars, it is likely that the defendant recognized the three cars as police vehicles, and that, even if he did not recognize the cars, he identified through the windshields the host of police officers all wearing badges and jackets clearly marked in yellow with "Metropolitan Police Department." *Edmonds,* 240 F.3d at 62 (explaining that if the officer could observe the defendant through his windshield, it is a "fair inference" that the defendant in turn saw the officer and "perceived his badge"). Equally important, Sergeant Powell, who had training in gun recognition, reasonably believed that the defendant was carrying something in his waistband after observing the defendant raise his hand to his waist area. Only affirming the officers' suspicions was the fact that the defendant refused to submit to repeated efforts by the officers identifying themselves as police officers and commanding him to stop. All of these factors, "viewed through the eyes of a reasonable and cautions police officer on the scene, guided by his experience and training," is enough for the officers here to be reasonably suspicious that the defendant was involved in some criminal activity. *See id.* at 60 (quoting *United States v. Hall,* 525 F.2d 857, 859 (D.C.Cir.1976) (internal quotations omitted)).

For the foregoing reasons, by the time the defendant was tackled, and the gun was dislodged from his hand, the officers had reasonable suspicion to stop, and probable cause to arrest, the defendant. Any evidence seized from the defendant was done in a manner consistent with the Fourth Amendment.

### B. Motion to Suppress Statements

█ The defendant also argues that statements made upon his arrest were made in violation of the Fifth Amendment. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court disagrees because there is no evidence that the defendant's statements were made involuntarily or as a result of police coercion. *See United States v. Samuels,* 938 F.2d 210, 214 (D.C.Cir.1991) (finding that spontaneous statements are admissible without *Miranda* warnings). As the defendant was being moved to the transport vehicle, he simply blurted out several times that "you are not going to get any prints off of it." His statements were spontaneous, not solicited by an officer's questions or comments. For this reason, the Court denies the defendant's motion to suppress the statements

### III. Order

For the above-stated reasons, it is hereby

**ORDERED** that defendant's motion to suppress evidence [# 28] is DENIED;

**ORDERED** that defendant's motion to suppress statements [# 26] is DENIED;

**SO ORDERED.**

---

**2.** The Supreme Court explained further that "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of it." *Wardlow,* 528 U.S. at 124, 120 S.Ct. 673.