**UNITED STATES,**

v.

**Jeff Henry WILLIAMSON, Defendant.**

**Criminal Action No. 14-151 (RMC)**

United States District Court,
District of Columbia.

Signed 11/12/2014

42

Frederick Walton Yette, U.S. Attorney's Office, Washington, DC, for United States.

Jeffrey Henry Williamson, Phoenix, AZ, Richard Keith Gilbert, Law Offices of Richard Keith Gilbert, Stephen C. Leckar, Kalbian Hagerty LLP, Washington, DC, for Defendant.

### ORDER GRANTING DEFENDANT'S RENEWED MOTION TO SUPPRESS [DKT. 178]

ROSEMARY M. COLLYER, United States District Judge

Jeff Henry Williamson filed a "Renewed Motion to Suppress Statements" in support of his original motion to suppress statements, Dkt. 90. *See* Renewed Mot. [Dkt. 178]. Mr. Williamson sought to suppress a statement he made at the time of his arrest based on an alleged *Miranda* violation. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Government argued *Miranda* did not apply because the statement was not made in response to interrogation; it was a spontaneous remark.

The Court held an evidentiary hearing on this issue on October 27, 2014. United States Deputy Marshal Adewale Mustapha testified that he and Special Agent Jim Christie of the Federal Bureau of Investigation arrived at the scene of Mr. Williamson's arrest at the same time. When they arrived, Mr. Williamson already was handcuffed and had personal belongings in suitcases with him. While Agent Christie was patting Mr. Williamson down prior to transporting him to the Metropolitan Police Department lock-up, Agent Christie asked Mr. Williamson what should be done with the suitcases. Mr. Williamson responded:

> FBI faggots, you can do whatever you want to do with my property, put it in your fucking FBI locker room. I know my rights. You guys are gang stalking me. I'm tired of this (sic) FBI agents.

Tr. 10/27/2014 at 9 (Mustapha). Deputy Mustapha continued to describe the arrest:

> I think Agent Christie asked him why you so mad? He started using profanity ... I'll gouge out your eyes, cut out your trachea. I eat guys like you for lunch .... It was right in [the] face in front of Agent Christie.

*Id.* Deputy Mustapha then clarified that Agent Christie asked "why are you so mad?" *after* Mr. Williamson threatened to tear out Agent Christie's eyes and trachea and not before. *Id.* at 10.

Mr. Williamson testified that before Agent Christie and Deputy Mustapha ar-

rived, Secret Service officers stopped him and asked him where he was going and what he was doing. The Secret Service officers determined that there was a warrant for Mr. Williamson's arrest, and they placed him in handcuffs. Mr. Williamson testified that one officer asked him why was he so mad, and only then did he make a statement "similar" to the statement "I'll tear out your eyes and cut out your trachea." *See id.* at 24–25.[1]

The parties agree that no one in law enforcement gave Mr. Williamson a *Miranda* warning until they took him to the police station. Mr. Williamson contends that the statement "I'll gouge out your eyes, cut out your trachea" or words to that effect should be suppressed because he was not advised of his rights before he underwent custodial interrogation.[2]

 In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court found that the privilege against self-incrimination protects individuals from an "informal compulsion exerted by law-enforcement officers during in-custody questioning." *Pennsylvania v. Muniz*, 496 U.S. 582, 587, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (quoting *Miranda*, 384 U.S. at 461, 86 S.Ct. 1602). *Miranda* safeguards are required when a person in custody is subject to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 299, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The

parties here do not dispute that Mr. Williamson was in custody at the time he made the statement regarding "eyes" and "trachea." "Interrogation" refers to express questioning and also to any words or actions on the part of the police that the police should know are reasonably likely to elicit incriminating answers. *Id.* at 301, 100 S.Ct. 1682. Therefore, "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.* at 300–301, 100 S.Ct. 1682. However, responses to questions that otherwise qualify as "custodial interrogation" are rendered admissible when they fall within the "routine booking question" exception. *Muniz*, 496 U.S. at 601, 110 S.Ct. 2638 (questions to secure the biographical data necessary to complete booking or pretrial services are exempted from *Miranda*'s coverage). Also, volunteered and spontaneous statements made without *Miranda* warnings are admissible if they were not made in response to police questioning. *United States v. Samuels*, 938 F.2d 210, 214 (D.C.Cir.1991); *United States v. Tuten*, 293 F.Supp.2d 30, 33 (D.D.C.2003).

The Court found that Agent Mustapha was the more credible witness and that Agent Christie asked "why are you so mad" *after* Mr. Williamson said something similar to "I'll gouge out your eyes, cut out

---

1. Mr. Williamson testified as follows:

 Q. And you admit that you made statements similar to what Agent Mustapha testified to?

 A. I don't know if they were exactly those words, but maybe something similar to that.

 Q. Something like I'll rip our your trachea?

 A. I don't know if I used those exact words, but maybe something similar to that.

 Tr. 10/27/2014 at 24; *see also id.* at 25 (Mr. Williamson testified that "I think the why are you so angry ... came before the fact ....")

2. Mr. Williamson also contends that he did not have notice of the October 27, 2014 hearing. This is false. The combined pretrial conference/motions hearing was scheduled for the October 27 date at a hearing in court on August 5, 2014. *See* Minute Entry filed Aug. 5, 2014. The Court reminded the parties of the October 27 conference/hearing in an Order filed on September 11, 2014, *see* Order [Dkt. 52], and again in an Order filed on October 23, 2014, which was hand delivered to Mr. Williamson no later than October 24, 2015, *see* Order [Dkt. 163].

your trachea."[3] However, the FBI Report on the incident sets forth a different sequence, *i.e.*, the FBI Report states that Agent Christie asked "why are you so mad" *and then* Mr. Williamson said something similar to "I'll gouge out your eyes, cut out your trachea." Tr. 10/27/2014 at 12-13, 19.

Although at the hearing the Court denied the motion to suppress, on further consideration, it finds that the question of "spontaneous utterance" versus "interrogation without *Miranda* warnings" is too close to call. The parties agree that Mr. Williamson was in custody, and the question "why are you so mad?" is not a routine booking question. The Court prefers to err on the side of the Defendant. Accordingly, it is hereby

**ORDERED** that Defendant's renewed motion to suppress statements [Dkt. 178] is **GRANTED**.

The parties are reminded that trial is scheduled for December 8, 2014 at 9:30 a.m. A status conference is set for November 17, 2014 at 2:00 p.m.

---

**3.** Mr. Williamson quibbles with the exact wording of the alleged statement. He claims that he "said something along the lines of I hope one of your fugitives rips out [Agent Christie's] trachea and eye sockets or something to that effect not that the defendant would do it." Renewed Mot. to Suppress [Dkt. 178] at 3.