**UNITED STATES, Appellee,**

v.

**Timothy L. COUSENS, Defendant, Appellant.**

**No. 90–1615.**

United States Court of Appeals, First Circuit.

Heard June 5, 1991.

Decided Aug. 2, 1991.

Perry O'Brian, Bangor, Me., by appointment of the Court, with whom Vandermeulen, Goldman, Allen & O'Brian, Augusta, Me., was on brief for defendant, appellant.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland, Me., was on brief for appellee.

Before SELYA and CYR, Circuit Judges, and KEETON,* District Judge.

KEETON, District Judge.

On November 29, 1989, a federal grand jury in Bangor, Maine returned an eleven-

* Of the District of Massachusetts, sitting by desig-        nation.

count indictment against defendant-appellant Timothy Cousens. Cousens pleaded guilty on March 14, 1990 to

  (a) Counts One through Five, charging him with making false written statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6); and

  (b) Counts Six through Eight and Eleven, charging him with knowingly and unlawfully receiving and possessing certain firearms after being convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

The remaining two counts (Nine and Ten) were dismissed. Among the numerous firearms identified in the indictment were a Beretta 9mm pistol ("Beretta") (Counts Two and Six) and a Raven .25 caliber pistol (".25 caliber") (Count Eleven).

The district court, after holding sentencing proceedings and applying the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), determined that Cousens' adjusted total offense level was 13, his criminal history category was III, and the applicable guideline sentencing range was accordingly 18–24 months. The court imposed a sentence of 18 months imprisonment and a $2,000.00 fine. On this appeal, Cousens contends that the court erred

  (a) in finding that Cousens did not possess the Beretta and the .25 caliber solely for sport or recreation, and

  (b) in separating the counts into three groups to determine Cousens' combined offense level under U.S.S.G. § 3D1.4, rather than treating all of the counts as a single group under U.S.S.G. § 3D1.2.

We affirm the judgment of the district court.

## I. No Special Offense Characteristics

Cousens was charged with and pleaded guilty to making a false statement in acquiring (Count Two), and illegally receiving (Count Six), a Beretta on September 21, 1989. He also was charged with and pleaded guilty to illegally possessing a .25 caliber pistol on November 7, 1989 (Count Eleven). Cousens contended at the sentencing proceedings and contends on appeal that the Beretta and the .25 caliber were obtained or possessed solely for lawful purposes or recreational use and that, because of these special offense characteristics, he is entitled to a reduction in the applicable offense level under U.S.S.G. § 2K2.1(b)(2) (1987) and § 2K2.1(b)(1) (1989) (the Guidelines were amended between Cousens' acquisition of the Beretta and his possession of the .25 caliber).

Under section 2K2.1(b)(2) of the pre-November 1989 version of the Guidelines, applicable to the counts involving the Beretta, defendant Cousens would be entitled to a four-level decrease from the Base Offense Level (Level 9) applicable to those counts if he "obtained or possessed the firearm solely for sport or recreation. . . ." In the version of the Sentencing Guidelines effective November 1, 1989, applicable to Count Eleven involving the .25 caliber, defendant Cousens would be entitled to have the offense level reduced from 12 to 6 if he "obtained or possessed the firearm or ammunition solely for lawful sporting purposes or collection. . . ." U.S.S.G. § 2K2.1(b)(1) (1989); see also § 2K2.1(a)(2) (1989).[1] According to the commentary to

---

1. We recognize that, ordinarily, the version of the Guidelines in effect on the date of sentencing controls, not that in effect on the date of the crime's commission. *See* 18 U.S.C. § 3553(a)(4); *United States v. Aymelek*, 926 F.2d 64, 66 n. 1 (1st Cir.1991). Yet, where the application of the Guidelines in effect at the time of sentencing raises an *ex post facto* concern, as it does in this case, the court applies the version in effect at the time of the crime's commission. *See Aymelek* at 66 n. 1. Defendant was sentenced on June 15, 1990, triggering the application of the 1989 version of the Guidelines.

However, a downward adjustment with respect to the Beretta purchase would have reduced defendant's base offense level to 6 under the 1989 version, § 2K2.1(b)(1) (1989), and to 5 under the corresponding 1987 provision, § 2K2.1(b)(2) (1987). Thus, inasmuch as the Beretta purchase occurred before the effective date of the 1989 version, and the sought-after reduction, if obtained, would have yielded a higher base offense level under the 1989 Guidelines than under the 1987 set, we apply the 1987 Guidelines to the counts involving the Beretta.

each of the guideline provisions quoted above, "intended lawful use, as determined by the surrounding circumstances, provides a decrease in the offense level." U.S.S.G. § 2K2.1, comment. (n. 1) (1987); *id.* (n. 2) (1989). The commentary continues:

Relevant circumstances include, among others, the number and type of firearms (sawed-off shotguns, for example, have few legitimate uses) and ammunition, the location and circumstances of possession, the nature of the defendant's criminal history (*e.g.*, whether involving firearms), and the extent to which possession was restricted by local law.

*Id.*

Cousens contends that he purchased the Beretta and the .25 caliber for legitimate "lawful" uses, including hunting and self-defense, and that the district court erred when it declined to allow him a reduction in offense level under section 2K2.1(b). We review for clear error the district court's factual findings with regard to the intended purposes of purchasing and possessing the firearms at issue. *See United States v. Uzelac*, 921 F.2d 204, 205 (9th Cir.1990) (reviewing for clear error district court's determination that the defendant did not possess a firearm solely for sporting purposes) *and cases cited therein; see also United States v. Wheelwright*, 918 F.2d 226, 227–28 (1st Cir.1990) (fact-based determinations underlying application of sentencing guideline reviewed by appeals court under "clearly erroneous" standard); 18 U.S.C. § 3742(e) (in reviewing a sentence under the Guidelines, "[t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous...."). Moreover, "[a] defendant who seeks a downward adjustment in his base offense level under section 2K2.1(b)(2) bears the burden of proving, by a preponderance of the evidence, that he is entitled to the reduction." *Uzelac*, 921 F.2d at 205, *citing United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990) (applying section 2K2.1(b)(1) of the Guidelines effective November 1, 1989); *United States v. Dinges*, 917 F.2d 1133,

1135 (8th Cir.1990) (same). *See also United States v. Wyckoff*, 918 F.2d 925, 928 (11th Cir.1990) ("appellant must establish by a preponderance of the evidence that he possessed the [firearm] for sport or recreation") *and cases cited therein. See generally United States v. Ocasio*, 914 F.2d 330, 332 (1st Cir.1990) ("A defendant has the burden of proving his entitlement to a downward adjustment in the offense level.").

After receiving testimony from a gun dealer regarding the most likely uses for the Beretta and the .25 caliber, and testimony from Cousens regarding the alleged purposes for which he purchased and used the guns, the district court made the following findings orally at the sentencing proceedings:

Suffice it to say that ... the 9 millimeter Beretta pistol and the .25 caliber pistol are not sporting weapons within the meaning and contemplation of those pertinent provision[s] of the guidelines. By a clear preponderance of the evidence, the testimony here, [and] the contents of the [presentence] report, it's clear that the primary purpose of those weapons and those types of weapons was for defensive purposes in respect to other human beings.... And I suggest that a 9 millimeter Beretta with a 15–shot clip is not primarily intended to be used as a sporting weapon, even though it could be used for that. And the same is true of a .25 caliber pistol.

Transcript of Sentencing Proceedings ("T.") 41–42. *See also* Memorandum of Sentencing Judgment ("MSJ") p. 2, ¶ (e) ("the Beretta 9mm pistol is not a firearm used for sport or recreation."), and p. 5 ("the 9 mm. B[e]retta pistol and the .25 cal. pistol are not sporting weapons.... This conclusion is supported by a preponderance of the evidence."). The court concluded after making these findings that it would "afford no reduction with respect to those contentions about the character of those weapons." T. 42.

The district court's factual finding that neither the Beretta nor the .25 caliber is a "sporting" weapon, as that term is used in

the Guidelines, was not clear error. On the contrary, the evidence presented at the sentencing proceedings fully supported the court's findings. Mark LaCasse, a hunter and manager of a retail sporting goods store that sells firearms and that sold Cousens some of the firearms identified in the indictment, was called as a witness by Cousens at the proceedings. He testified on direct examination that the "primary" use of a Beretta, as that gun is sold by his store, "would be either to police officers or to individuals who wish to target shoot, self-defense." T. 9. In response to questioning from the court about the "primary purpose" of a Beretta, LaCasse indicated that the gun is primarily used by law enforcement officers and for "home protection." T. 14. He added that the Beretta had recently been selected for use by the United States armed forces. *Id.* LaCasse further testified that, though the Beretta is used by some people as a sidearm while hunting, this is not the gun's primary use and "[m]ost people who carry a sidearm hunting prefer a larger caliber," such as a .357 magnum. *Id.* at 13.

With regard to the .25 caliber, LaCasse testified that the primary use of such a handgun is for self-defense. T. 10. He specifically denied that a .25 caliber would be used for target shooting. *Id.* at 10–11. In response to further questioning from defense counsel regarding whether the Beretta and the .25 caliber generally are purchased for collection purposes, LaCasse stated that he had "never had a collector buy a .25 caliber" and that it "would be the exception rather than the rule" for a collector to buy a Beretta. *Id.* at 11.

The testimony of LaCasse provides ample support for the district court's finding that the Beretta and the .25 caliber were not obtained or possessed solely for lawful sporting purposes. Cousens, who testified in his own behalf at the proceedings, did not testify that he had obtained or possessed either gun for purposes of collection. Though Cousens testified that he purchased and used the Beretta as a sidearm while bird hunting and for target practice, the district court was certainly free to discredit Cousens' testimony. *See Wheel-*

*wright,* 918 F.2d at 228 ("matters of credibility are normally for the trial court, not [the appellate] court, to decide"); 18 U.S.C. § 3742(e) (court of appeals "shall give due regard to the opportunity of the district court to judge the credibility of the witnesses"). Moreover, in light of the fact that Cousens bore the burden of proof on the issue of whether the guns were used for lawful sporting purposes, recreation, or collection, *see Uzelac, supra,* the court was free to make its findings even without the supporting testimony of LaCasse. In the circumstances of this case, the district court committed no error, let alone clear error, in finding that no special offense characteristics were applicable under section 2K2.1(b).

With respect to the .25 caliber, Cousens concedes that the gun was not obtained for sporting purposes. He asserts that it was obtained and possessed for purposes of self-defense for his wife. He contends that because self-defense is a "lawful use," he should have received an offense level reduction for Count Eleven from 12 to 6. Under the specific language of U.S.S.G. § 2K2.1(b)(1), the firearm or ammunition must be obtained or possessed "solely for lawful sporting purposes or collection" in order to qualify for a reduction in offense level. We do not read the Guidelines as providing for a reduction because a gun is possessed for potential use in self-defense. Indeed, so reading the Guidelines might in practice lead to the curious result that section 2K2.1(b)(1) would be invoked more often on the ground of possession for self-defense—a ground not explicitly stated— than on either of the two grounds the Sentencing Commission determined to be worthy of explicit mention—"sporting purposes" and "collection." Self-defense, though lawful in some circumstances, is not a matter referred to in the Guidelines, specific and detailed though they are. Neither alone nor taken together with the context in which they appear do the cited textual provisions of the Guidelines bear the interpretation that the phrase "intended lawful use, as determined by the surrounding circumstances," U.S.S.G. § 2K2.1

comment. (n. 2), somehow incorporates self-defense generally (and not merely, for example, self-defense against wild animals during hunting) into the guideline reference to "lawful sporting purposes."

Noting that Cousens has cited no authority for his strained interpretation of the plain language of the applicable section, we decline to adopt the generous reading he seeks. A firearm purchased for purposes of self-defense does not qualify for a reduction in offense level under U.S.S.G. § 2K2.1(b)(1), and the district court's refusal to grant such a reduction was appropriate. *See Wyckoff*, 918 F.2d at 928 ("[s]elf-defense or self-protection is not sport or recreation" under U.S.S.G. § 2K2.1(b)(2), before November 1989 amendments). *See also United States v. Wilson*, 878 F.2d 921, 924 (6th Cir.1989) ("we reject appellant's argument that section 2K2.1(b)(2) [before November 1989 amendments] was written to allow a reduction for any innocent possession.... [T]he only 'intended lawful use' which would support a decrease in the offense level is sport or recreation.").

## II. *Grouping*

Cousens entered pleas of guilty on the following counts:

| Count | Date of Offense | Firearm | Offense |
|-------|-----------------|---------|---------|
| One | 11/6/87 | Marlin .44 Magnum Rifle | 18 U.S.C. § 922(a)(6) false statement |
| Two | 9/21/89 | Smith & Wesson .44 Magnum Revolver; Storm Ruger 30–06 Rifle; Beretta 9mm Pistol | 18 U.S.C. § 922(a)(6) false statement |
| Three | 9/22/89 | Browning 12 Gauge Shotgun | 18 U.S.C. § 922(a)(6) false statement |
| Four | 9/27/89 | Ruger .270 Caliber Rifle | 18 U.S.C. § 922(a)(6) false statement |
| Five | 9/30/89 | Ruger .270 Caliber Rifle | 18 U.S.C. § 922(a)(6) false statement |
| Six | 9/21/89 | Same as Count Two | 18 U.S.C. § 922(g)(1) illegal receipt |
| Seven | 9/22/89 | Same as Count Three | 18 U.S.C. § 922(g)(1) illegal receipt |
| Eight | 9/27/89 | Same as Count Four | 18 U.S.C. § 922(g)(1) illegal receipt |
| Eleven | 11/7/89 | Raven .25 Caliber Pistol; 2 Harrington & Richardson 12 Gauge Shotguns | 18 U.S.C. § 922(g)(1) illegal possession |

Under U.S.S.G. § 3D1.2, "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Whether or not counts are determined to be part of the same group bears upon the determination of combined offense levels under section 3D1.4 and ultimately affects the applicable guideline sentencing range

for those counts. *See generally United States v. Wheelwright*, 918 F.2d at 229–31 (discussing the multiple count provisions of the Guidelines). In this case, the district court determined that it was appropriate to separate the counts into three groups: (1) Count One, (2) a group including Counts Two through Eight, and (3) Count Eleven. Cousens contends that the court should have grouped together all nine counts and that the guideline range for such a grouping would have been 10–16 months as opposed to 18–24 months under the court's grouping. Defendant–Appellant's Brief, 17 n. 4.

## A. Guideline Language and Commentary

U.S.S.G. § 3D1.2 provides in pertinent part that counts involve "substantially the same harm" and accordingly shall be grouped together into a single group:

(a) When counts involve the same victim and the same act or transaction[ ] [or]

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan,....

The section further states:

(d) Counts are grouped together if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Subsection 3D1.2(d) goes on to specify a set of offenses to which it applies as well as a set of offenses specifically excluded from its operation. The firearms offenses at issue, covered by U.S.S.G. § 2K2.1, are in neither set. In these circumstances,

grouping under this subsection may or may not be appropriate; a case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense

characteristics and other adjustments) used to determine the offense level.

U.S.S.G. § 3D1.2(d).

The commentary to section 3D1.2 provides in part that "for so-called 'victimless' crimes (crimes in which society at large is the victim), the grouping decision must be based primarily upon the nature of the interest invaded by each offense." *Id.*, comment. (n. 2). It further provides that, under subsection (b), "counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times." *Id.* (n. 4). Finally, the commentary relating to subsection (d) provides that

most property crimes ..., ... firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together. 'The same general type of offense' is to be construed broadly, and would include, for example, larceny, embezzlement, forgery, and fraud.

*Id.* (n. 6). As one of many examples of how subsection (d) operates in specific circumstances, the commentary states that, when a defendant is convicted of three counts of unlicensed dealing in firearms, all three counts are to be grouped together. *Id.*

## B. Application of Guideline Grouping Provisions by District Court

In its written Memorandum of Sentencing Judgment, the district court "concludes" that Counts Two through Eight "should be grouped since the offenses were connected by a common criminal objective and were part of a common scheme or plan." MSJ at 1, ¶ (a). This statement invokes the language of U.S.S.G. § 3D1.2(b) as justification for grouping seven of the nine counts on which Cousens was sentenced. On the record at the sentencing proceedings, the court stated the same "conclusion" orally, adding, as additional justifications for grouping, the fact that all of Counts Two through Eight

"were committed close together in time for what I *conclude, by a preponderance of the evidence,* is a common series of objectives by this defendant, and the purchases were all made out of a common pool of money." T. 41 (emphasis added). Because this "conclusion" was explicitly stated to be "by a preponderance of the evidence," it was, at least in part if not entirely, a finding. The court made the additional subsidiary determination that six of the seven grouped counts were also appropriately grouped in three pairs pursuant to section 3D1.2(a) because they "involve the same act and transaction." MSJ at 2, ¶ (b). This subsidiary determination, however, does not affect the preliminary decision to group all seven counts. This is so regardless of whether it be regarded as a conclusion, or finding, or a determination of a mixed question of law and fact, or an "application of the guidelines to the facts" (*see* Part II.C., *infra*). Similarly, it does not affect the determination of the combined offense level under section 3D1.4.

Cousens does not object to the court's decision to group Counts Two through Eight, but instead contends that the court should have added Counts One and Eleven to that group.

## C. Standard of Review for Grouping Determinations

■ Under 18 U.S.C. § 3742(e), a court of appeals reviewing a sentence under the Guidelines "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." The determination of whether and how to group counts under the multiple count provisions of the Guidelines more closely resembles an application of the Guidelines to the facts than a finding of fact. Accordingly, we give "due deference" to the grouping determinations of the district court.

In *United States v. Wright,* 873 F.2d 437, 443–44 (1st Cir.1989), this court discussed the appropriate standard of review for mixed questions of law and fact under the Guidelines. Reviewing in *Wright* a dis-

trict court's decision whether a defendant was a "minor" or "minimal" participant in an offense under U.S.S.G. § 3B1.2, this court applied a "clearly erroneous" standard of review. *Id.* at 444. The court reasoned:

> Applying the 'role in the offense' Guidelines to the individual circumstances of each defendant is, as the commentary points out, 'heavily dependent on the facts of the particular case,' Guideline § 3B1.2, Commentary; it requires an inquiry that is ' "essentially factual"—one that is founded "on the application of the fact-finding tribunal's experience with the mainsprings of human conduct." '

*Id., quoting United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (*en banc*), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

In *Wright,* after noting Supreme Court decisions holding that clearly erroneous review is appropriate to particular mixed questions of law and fact, this court stated:

> the words 'due deference' in [18 U.S.C. § 3742(e)] must mean that, in appropriate instances, a court of appeals may review a sentencing court's application of a guideline to the facts in the same way that it reviews a sentencing court's findings of fact, *i.e.,* under a 'clearly erroneous' standard.

*Wright,* 873 F.2d at 444 (citation to statute omitted). *See also United States v. Preakos,* 907 F.2d 7, 8 (1st Cir.1990) (where appeals court is reviewing district court's findings that defendant used firearms to protect his drug operation and that defendant was organizer or leader of criminal activity under Guidelines, " 'due deference' requires that we review the district court's fact-based application of the guidelines only for clear error"), *citing United States v. Jimenez–Otero,* 898 F.2d 813, 814–15 (1st Cir.1990) (reviewing "only for clear error" the district court's fact-based determination regarding defendant's purpose in holding a screwdriver during the commission of a crime).

In *United States v. Diaz–Villafane,* 874 F.2d 43, 48 (1st Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989),

this court reviewed the district court's finding that a defendant was an "organizer, leader, manager or supervisor" in a criminal activity involving more than one but fewer than five participants. The court held that "[b]ecause this finding involves a 'mixed' fact-law question, defendant has the burden of showing it to be 'clearly erroneous.'" *Id.*

The grouping determination at issue in this case, however, unlike the primarily factual determinations reviewed in *Wright, Preakos, Jimenez–Otero,* and *Diaz–Villafane,* is not easily characterized as either predominantly factual or predominantly legal. Though this court in the four cited cases applied a clearly erroneous standard to determinations by the district court that were characterized as mixed questions of fact and law, or applications of the Guidelines to the facts, the opinion in *Wright* also implied that there are some instances where clearly erroneous review of a sentencing court's application of a guideline to facts would not be appropriate. *See Wright,* 873 F.2d at 444 (clearly erroneous review of guideline application may be applied "in appropriate instances"). In *Wheelwright,* 918 F.2d at 231, this court reviewed grouping determinations by the district court under U.S.S.G. § 3D1.2(d) but did not explicitly indicate what standard of review it was applying to those determinations.

Other courts of appeal that have addressed the issue of the appropriate standard of review for a grouping determination by the district court have applied standards ranging from *de novo* (that is, nondeferential) review to an explicitly deferential standard. *Compare United States v. Wilson,* 920 F.2d 1290, 1294 (6th Cir.1990) ("application of Section 3D1.2 to a particular set of undisputed facts is a question of law that is reviewed de novo") *and cases cited therein with United States v. Pope,* 871 F.2d 506, 509 (5th Cir.1989) (in reviewing determination under U.S.S.G. § 3D1.2(d), which depends in part on "factual and case-specific conclusions," court of appeals must give "due deference" to the district court, "and respect the informed judgments made by that court"). *See also*

*United States v. Ballard,* 919 F.2d 255, 257 (5th Cir.1990) (applying *de novo* standard to a "purely legal" interpretation of counts specifically enumerated in U.S.S.G. § 3D1.2(d)), *cert. denied,* —— U.S. ——, 111 S.Ct. 1429, 113 L.Ed.2d 481 (1991). It is unnecessary for us to decide here whether these precedents are entirely consistent (because of differing circumstances) and more precisely what is or are the appropriate standard or standards of review for guideline grouping determinations. On the facts of this case, we conclude, for reasons explained below, that we should uphold the district court's groupings even under *de novo* review.

### D. Grouping Was Appropriate

█ In *Wheelwright,* this court upheld a district court's grouping determination, noting that

> differences in place, time, nature of the guns, lack of drugs, and intervening arrests, in our view, when taken together, permitted the district court to conclude that the third offense did not share a 'common criminal objective' with the first two offenses nor was it part of the ('fungible substance') common 'scheme or plan.'

918 F.2d at 231. Similarly, in this case, we conclude that the differences between Counts One and Eleven and the remaining seven counts were sufficient to make the district court's decision not to group them together appropriate.

Cousens purchased the gun at issue in Count One almost two years before he purchased, with funds from a different source, the other guns identified in the indictment. The guns at issue in Count Eleven, though purchased only five weeks after the guns purchased in the grouped counts, included a pistol purchased from a different seller. Also, the .25 caliber identified in Count Eleven was purchased allegedly for purposes of self-defense, whereas the remaining firearms were purchased, according to Cousens, for hunting and target practice. Though we have upheld the district court's finding that the Beretta identified in Counts Two and Six was not pur-

chased or used solely for sporting purposes, that finding does not preclude the Beretta from being grouped with the other guns purchased within the same nine-day period from the same gun dealer with funds from the same source. The possession of the .25 caliber, purchased over a month after the guns in the grouped counts from a different dealer, solely for self-defense of Cousens' wife, was sufficiently different to justify the district court's decision to place it in a separate group.

Cousens contends that all nine counts should have been grouped together because they all involve substantially the same harm. He specifically contends that his offenses should have been grouped under U.S.S.G. § 3D1.2(b) (for counts involving "the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan") and § 3D1.2(d) (in pertinent part, applicable where "the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior"). Given the differences in time, place, and nature of the firearms offenses described above, Cousens' contentions are not persuasive. Cousens did not demonstrate that his independent offenses (Counts One and Eleven) involved transactions connected by a common criminal objective or constituting part of a common scheme or plan with the grouped offenses (Counts Two through Eight). Similarly, he has failed to demonstrate that his offense behavior was "ongoing and continuous" as contemplated by section 3D1.2(d) of the Guidelines. With respect to this contention, Cousens refers to language in the commentary to section 3D1.2(d) that mentions firearms offenses as among the crimes that properly may be grouped under its provisions. However, the sole example in the commentary that relates to the application of grouping to firearms offenses addresses unlicensed dealing in firearms. *See* U.S.S.G. § 3D1.2, comment. (n. 6). Cousens, who purchased different firearms on different occasions for different purposes using funds from different sources, readily may be distinguished from a defendant who pleads guilty to three counts of unlicensed dealing in firearms. In sum, nothing in the cited guideline subsections or commentary supports Cousens' contention that the grouping determinations by the district court were inappropriate.

*Affirmed.*