**UNITED STATES, Appellee,**

v.

**Arthur DOE, Defendant, Appellant.**

**No. 92–2331.**

United States Court of Appeals, First Circuit.

Heard Jan. 3, 1994.

Decided March 18, 1994.

Richard B. Klibaner, by Appointment of the Court, with whom Klibaner & Sabino, Cambridge, MA, was on brief for appellant.

Ralph F. Boyd, Jr., Asst. U.S. Atty., with whom A. John Pappalardo, U.S. Atty., Boston, MA, was on brief for appellee.

Before BREYER, Chief Judge, SELYA and BOUDIN Circuit Judges.

BREYER, Chief Judge.

This appeal focuses upon the decision of the district court, when sentencing Arthur Doe, to depart from the Sentencing Guidelines. A jury found Doe guilty of possessing a gun after a previous felony conviction. 18 U.S.C. § 922(g)(1). The Sentencing Guidelines specified an imprisonment range of about two years (21 to 27 months). The district court, believing that the Guideline range did not adequately reflect Doe's prior criminal record, departed and imposed a sentence of six years imprisonment instead. Doe now appeals. We find the departure lawful, and we affirm his sentence.

## I

### Background

This is Doe's second sentencing appeal. The first time, the district court had found applicable a special "mandatory minimum" sentencing statute requiring the court to impose at least a fifteen year prison term upon "felons in possession" of a gun with three (or more) previous convictions for *"violent* felonies." 18 U.S.C. § 924(e)(1) (emphasis added). In that earlier appeal, we focused upon one of Doe's three earlier felony convictions, namely a 1984 conviction for being a "felon in possession" of a gun (a different and earlier instance of the present crime). We held that this particular felony—the "felon in possession" crime—is not itself a *violent* felony; hence the "mandatory minimum" statute did not apply. *See United States v. Doe,* 960 F.2d 221 (1st Cir.1992).

On remand, the district court properly referred to the 1989 Sentencing Guidelines (in effect in March, 1990, when Doe committed the crime) instead of the stricter (1991) version in effect at the time of Doe's resentencing. *See United States v. Cousens,* 942 F.2d 800, 801 n. 1 (1st Cir.1991). Under the 1989 Guidelines, the base offense level for the "felon in possession" crime was 12. U.S.S.G. § 2K2.1(a)(2). The Guidelines assigned a total of eight criminal history points for Doe's earlier convictions. The result, offense level 12 at Criminal History Category IV, produced a Guideline sentencing range of 21 to 27 months. *See* U.S.S.G. ch. 5, pt. A (Table).

The court, after review of the presentence report and after argument at the sentencing hearing, decided that Doe's case was an unusual, rather than ordinary, case, in four respects:

1) At least one of Doe's prior convictions, for armed bank robbery, was a particularly dangerous crime involving use of a gun.

2) Doe's record revealed a history of serious, aggravated assaults.

3) Doe's record revealed a history of committing crimes while he was free on bail awaiting trial (or the like).

4) At the time of his arrest for the present crime, Doe led the police on a high speed chase, endangering the lives of others.

In light of these special features of the case, the court departed from the applicable guideline range (approximately two years) and instead imposed a prison term of six years. Doe now appeals this sentencing departure. 18 U.S.C. § 3742(a).

## II

### Standard of Review

The legal issues before us are typical of the kinds of issues raised in sentencing departure appeals. They concern (1) the grounds for departure, i.e., whether or not the circumstances are of a "kind or degree" upon which a district court "may appropriately" rely "to justify departure," *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); and (2) whether the extent of the district court's departure (from about two years to six) was "reasonable." *Id.;* 18 U.S.C. § 3742(e)(3).

We explained our reviewing approach to these kinds of issues in *Diaz–Villafane,* 874 F.2d at 49, and in *United States v. Rivera,* 994 F.2d 942 (1st Cir.1993). Some district court decisions that a particular case is unusual enough to warrant departure reflect sentencing experience of a sort one typically finds in district, not appellate, courts; in our view, the law provides the district court a degree of "leeway" in making those "kind or degree" judgments. *Rivera,* 994 F.2d at 951. Other departure decisions reflect a determi-

nation of the purpose of, or an interpretation of the language in, a guideline or statute; in such cases, where a district court has no comparative expertise in resolving the "quintessentially legal" issue, an appellate court will review the district court's determination independently. *Id.*

■ In this case, when we decide whether the district court gave proper legal reasons for departing, we shall apply one or the other of these standards of review, as appropriate. When we review the degree of departure for its "reasonableness," we shall apply a "deferential" standard of review. *Rivera,* 994 F.2d at 950; *Diaz–Villafane,* 874 F.2d at 49–50.

### III

### *Grounds for Departure*

### A

### *The Bank Robbery*

The district court's first reason for departing consisted of the *nature* of one of Doe's earlier crimes. That crime was a bank robbery in daylight, committed with guns, that put employees and bystanders at risk of serious harm. The Guidelines assigned three criminal history points for this crime. But the district court, noting, among other things, Doe's repeated use of guns, thought that it warranted more.

Doe argues that the Guidelines forbid the district court from departing for this reason. He notes that a departure reason must, at least in principle, make the case "unusual"; it must suggest circumstances that remove the case from the "heartland" of the relevant guideline. *Rivera,* 994 F.2d at 947–48. But, he says, the fact that an earlier felony involved use of a gun, or a related risk of violence, cannot remove the case from the "heartland" where, as here, the instant crime is being a "felon in possession." Doe points out that *everyone* convicted of the "felon in possession" crime must also have been convicted of a prior felony. In his view, so many felonies involve guns and risks of violence that an earlier conviction for such a crime must be common, not unusual, for a felon in possession. Hence, those circumstances must lie at the heart of, not on the periphery

of or outside, the relevant "felon in possession" guideline.

■ We can treat Doe's argument as one of pure legal principle and consider it independently on review only if we treat it as an extreme argument—an argument that the Guideline's heartland encompasses *all* earlier gun-related or risk-of-violence-related prior felonies. *See Rivera,* 994 F.2d at 951 (appellate court will independently perform "quintessentially legal" function of deciding what guideline means). Phrased in this way, the argument is not convincing. The "felon in possession" guideline says only that its base offense level of 12 applies when the defendant has previously

> been convicted … of a crime punishable by imprisonment for a term exceeding one year.

18 U.S.C. § 922(g)(1) (cited in U.S.S.G. § 2K2.1(a)(2)). That language, taken literally, covers a vast range of behavior, ranging from the totally nonviolent to the most heinous. Nothing in this language (or its apparent purpose) says that *every* (earlier) gun- or violence-related felony must fall within its heartland. To the contrary, the fact that Congress has imposed a fifteen-year mandatory prison term upon felons in possession with *three* earlier *violent* felonies, 18 U.S.C. § 924(e)(1), suggests, by extrapolation, something special about one or two earlier violent felonies. Moreover, whether the violent nature of an earlier crime does, or does not, warrant special treatment would seem the kind of fact-related circumstance about which the Sentencing Commission hoped to learn more, as district courts, on the basis of their experience, decided to depart, or not, in light of such circumstances. *See Rivera,* 994 F.2d at 946, 949–51 (explaining role of district courts in helping Commission revise Guidelines). Thus, even though we find some dismal truth in Doe's claim that large numbers of felonies involve guns and violence, we do not believe that the "felon in possession" guideline *automatically* rules out consideration of a departure based on such features.

To make Doe's argument more convincing, we must rephrase it as an argument that *here,* in *this* case, the nature of the earlier

gun crime is not special enough to warrant a departure. Indeed, whether the special facts of daytime bank robbery, guns, and risks of violence, make this case unusual enough to permit departing beyond the added punishment that accompanies three criminal history points presents a close question. But it is the very kind of question about which we must listen to the district courts with "respect." It

> amount[s] to a judgment about whether the given circumstances, as seen from the district court's unique vantage point, are usual or unusual, ordinary or not ordinary, and to what extent.

*Rivera*, 994 F.2d at 951. We have recognized the district court's

> special competence in making this kind of determination, because it may have a better "feel" for the unique circumstances of the particular case....

*Id.* We have also pointed out that, by permitting district courts a degree of leeway in making such determinations, they become, for the Sentencing Commission, an

> important source of information ... which ... can help the Commission determine whether, and how, Guidelines revision should take place.

*Id.* As we have just said, how district courts react to the presence of violence as an attribute of one or two prior violent felonies could help the Commission decide whether or not it should write guidelines that "extrapolate" from the mandatory minimum sentencing statute's requirement of three such prior convictions. (In fact, the Commission, in more recent guidelines versions, has extrapolated in this way. *Compare* U.S.S.G. § 2K2.1(a)(2) (1989) (level 12 for all felons in possession) *with* U.S.S.G. § 2K2.1(a)(2), (4)(A), (7) (1992) (level 24 for felons in possession with two prior violent felonies, level 20 for one, level 12 for none).)

These considerations, along with the obvious fact that putting innocent lives at risk, using guns, and robbing a bank in daylight, aggravate the prior conduct to some degree, lead us to find lawful the district court's decision to use these facts as *one* (of several) bases for departure. We need not decide how much of a departure (over and above the ordinary punishment attributable to three criminal history points) these facts alone would warrant, for these facts were not the district court's sole basis for departure. *See* Part IV, *infra* (discussing the *extent* of the departure based on *all* permissible factors).

### B

#### *Repetitive Assaultive Behavior*

■ The district court set forth another ground for its belief that "reliable information" indicated that the Guidelines'

> criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct.

U.S.S.G. § 4A1.3 (p.s.) (encouraging departure where that is so). That ground consists of what the district court called "a virtually unbroken chain of assaultive behavior." One of Doe's earlier convictions involved Doe's having hit someone over the head with a pipe; another involved beating two men with a handgun and kicking one of them. The Guidelines assigned *no* criminal history points for either of these serious crimes, in the first instance because Doe was under 18 at the time (and the conviction was more than five years old); in the second instance because (although the court tried the still underage Doe as an adult) the court suspended Doe's sentence, perhaps because he was about to be sentenced to a lengthy federal prison term for bank robbery. *See* U.S.S.G. § 4A1.2(b)(2), (d).

Doe cannot deny the rather special nature of these circumstances, which resemble those for which the Guidelines encourage criminal history departures. U.S.S.G. § 4A1.3 (p.s.); *cf. United States v. Aymelek*, 926 F.2d 64, 73 (1st Cir.1991) (adult convictions not counted in criminal history score may serve as basis for departure if they evidence "some significantly unusual penchant for serious criminality"). Doe does, however, make one important purely legal argument. He points to two federal appeals court cases that hold that the Guidelines not only fail to encourage, but they forbid, criminal history departures where, as here, the departure rests on a *juvenile*'s uncounted criminal conduct (un-

less the juvenile conduct is "similar" to the present crime of conviction). *United States v. Samuels,* 938 F.2d 210, 214 (D.C.Cir.1991); *United States v. Thomas,* 961 F.2d 1110, 1116 (3d Cir.1992) (adopting *Samuels* ).

We do not accept the argument because these two circuits, in these cases, read the Guidelines' approach to departures contrary to this circuit's understanding. *See Rivera,* 994 F.2d at 946–52. In *Samuels,* the D.C. Circuit reached its conclusion by engaging in a kind of "statutory interpretation" of Guideline commentary. It noted that the Sentencing Guidelines, when calculating a criminal history score, count prior adult crimes up to fifteen years old, but they do not count prior juvenile crimes more than five years old. U.S.S.G. § 4A1.2(d), (e) (setting forth approximately this rule, though tying most calculations to prior *sentences,* rather than to prior *crimes* ). It also noted that, in an application note, the Commission explains that this "fifteen versus five" year difference is due to the "differential availability" of juvenile records (i.e., sometimes juvenile records are available and sometimes they are not). *See* U.S.S.G. § 4A1.2 comment. n. 7. It further noted that, in a different application note, the Commission adds that a sentencing court might nonetheless want to use an outdated adult or juvenile crime (i.e., one more than fifteen years old, or more than five years old, respectively) as a basis for departure where that crime provides "evidence of *similar* misconduct" with respect to the present offense. *Id.* n. 8 (emphasis added). From these two statements in commentary, the *Samuels* court drew the conclusion that the Guidelines *forbid* a court to use a pre-cutoff-date juvenile conviction as a basis for a departure, *unless* that conviction reveals conduct *similar to* the conduct underlying the present offense of conviction; in its view, any other rule "would plainly exaggerate the sentencing disparities that [the five-year cutoff] is meant to curb." *Samuels,* 938 F.2d at 214–16. *Thomas* basically followed *Samuels. Thomas,* 961 F.2d at 1116.

Our reason for disagreeing with this analysis has two parts. First, the application notes to which the *Samuels* court pointed *do not say* whether or not it is sometimes permissible to depart on the basis of a juvenile offense that reflects *dis* similar, pre-cutoff-date, conduct. The first application note, referring to the "differential availability" of juvenile records, talks about *ordinary* cases. It explains (in part) why the Commission established a five year, rather than a fifteen year, cutoff date for juvenile offenses, *for purposes of computing the criminal history score. See* U.S.S.G. § 4A1.2 comment. n. 7. But *every* Guideline case requires a criminal history score computation. Hence, the rules governing that computation affect the outcome of *ordinary* guidelines cases where uniformity is a major Guidelines goal. The note says nothing about *departures*—the Guidelines' escape hatch for *unusual* circumstances—which by definition create, and are supposed to create, *non*-uniformity. The second application note refers to a special reason for departing, namely the presence of serious similar instances of criminal conduct that the Guidelines' calculation system ignores, *see id.* n. 8, and it "encourages" departures for this reason, *see Rivera,* 994 F.2d at 948. That note, however, *does not mention* departures for *other* reasons, such as the presence of uncounted, earlier, *dis* similar conduct. *See id.* at 947–49 (distinguishing among "ordinary," "encouraged," "discouraged," and "forbidden" departures). Thus, the note provides *no explicit* Commission guidance on this question.

Second, the *Samuels* court's inference (that the application notes *imply* an *unstated* principle that the Guidelines forbid using pre-cutoff-date, dissimilar, juvenile conduct as a basis for departure) is directly contrary to our understanding of the Guidelines' intentions as to whether, and when, courts may depart. *See Rivera,* 994 F.2d at 947–49. The Introduction to the Guidelines says expressly that, with a handful of exceptions, the Guidelines *do not "limit* the kinds of factors, *whether or not mentioned anywhere else in the guidelines* that could constitute grounds for departure *in an unusual case."* U.S.S.G. ch. 1, pt. A(4)(b) (p.s.) (emphasis added); *see Rivera,* 994 F.2d at 947. The handful of explicit listed exceptions includes such matters as race, sex, religion, and socio-economic status. *E.g.,* U.S.S.G. § 5H1.10; *Rivera,* 994 F.2d at 948–49. The listed exceptions do *not*

include conduct that was the subject of an outdated juvenile conviction. As we have said before, the language from the Guidelines' introduction that we have just quoted means that a court should not infer from inexplicit Guidelines language, or from language that authorizes use of a particular factor as a basis for departure in *some* cases, an *absolute* barrier in principle against using certain other factors as grounds for departure in *other unusual* circumstances. *See Rivera,* 994 F.2d at 948–49 (noting that with several *"explicit* exceptions," courts are "free to consider, in an unusual case," any factors making a case "unusual") (emphasis added).

■ We emphasize that the Commission's decision to impose very few limits *in principle* upon potential grounds for departure does not grant sentencing courts a license to treat each case as unique, as in the days of pre-guideline sentencing. To the contrary, it is meant to encourage sentencing courts (1) to ask whether a particular case is truly *unusual,* i.e., significantly different from the ordinary instance of the offense and, (2) if so, to explain precisely why. If the sentencing court wishes to depart, it must clearly state just how the case differs from an ordinary case, thereby not only permitting appellate courts to review the explanation, but also permitting the Commission to learn more about how the Guidelines work in practice. *See Rivera,* 994 F.2d at 951–52. That information will help the Commission decide whether, or how, to modify a Guideline document, which it sees as organic, evolving over time. U.S.S.G. ch. 1, pt. A(4)(b) (p.s.); *Rivera,* 994 F.2d at 951–52.

■ Departure decisions resting upon prior juvenile records, for example, might, after Commission examination, lead the Commission to write different guidelines, to encourage different kinds of departures, or even to forbid all departures based on outdated juvenile records, by explicitly saying so. But the decision about whether or not to forbid certain categories of departure belongs to the Commission, not to the courts. *See* U.S.S.G. ch. 1, pt. A(4)(b); *cf.* 18 U.S.C. § 3553(b) ("In determining whether a circumstance was adequately taken into consideration, the court shall consider *only* the sentencing guidelines,

policy statements, and official commentary of the Sentencing Commission.") (emphasis added). Indeed, after considering such departure decisions and the *Samuels* interpretation, the Commission in later Guidelines versions has rejected that interpretation, clarifying its prior intent, consistent with our views here. *See* U.S.S.G.App.C ¶ 472 (1992); *cf. Isabel v. United States,* 980 F.2d 60, 62–63 (1st Cir.1992) ("clarifications" of Guidelines may be applied retroactively; "substantive changes" may not).

Since we do not accept Doe's purely legal argument against the district court's use of his juvenile record, he cannot succeed here. His prior criminal conduct is well documented, it took place when he was almost eighteen years old, it was serious, and it was repeated. The district court, taking these circumstances together, saw in Doe's prior (uncounted) juvenile record a "significantly unusual penchant for serious criminality" that justified departure. *See Aymelek,* 926 F.2d at 73. Recognizing that the district court has a degree of legal "leeway" in making judgments of this sort, *Rivera,* 994 F.2d at 951, we find its decision lawful.

### C

### *Criminal Justice Control*

■ The district court found a further reason for departure in the fact that Doe had committed at least five earlier crimes while he was on bail, or was awaiting trial, or was under some other kind of "court supervision," in respect to a different crime. This kind of behavior, when not otherwise taken into account by the Guidelines themselves, *see, e.g.,* U.S.S.G. § 4A1.1(d), (e), is a proper reason for departure. *See, e.g., United States v. Fahm,* 13 F.3d 447, 449–450, 450–451 (1st Cir.1994); *United States v. Diaz–Collado,* 981 F.2d 640, 644 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2934, 124 L.Ed.2d 684 (1993); *United States v. Madrid,* 946 F.2d 142, 143–44 (1st Cir.1991); *United States v. Fields,* 923 F.2d 358, 362 (5th Cir.1991), *overruled on other grounds, United States v. Lambert,* 984 F.2d 658 (5th Cir.1993) (en banc); *United States v. Singleton,* 917 F.2d 411, 413 (9th Cir.1990) (all

upholding departures based in part on the fact that past crimes were committed under court supervision or shortly after release); *United States v. Hernandez*, 896 F.2d 642, 645 (1st Cir.1990) ("[A] defendant undermines the integrity of the criminal justice system when he commits a crime while he is under its supervision and control."). Again recognizing that the district court has a degree of legal "leeway" in deciding whether the particular circumstances present here are unusual enough to warrant a departure, we find its decision lawful.

## D

### *Reckless Endangerment*

█ At the time of Doe's arrest, he led the police on a high speed chase through city streets, along the wrong side of a divided highway into oncoming traffic, which ended when he crashed into other cars and a subway tunnel barrier. Endangering the lives of others in this way makes the instant case unusual, in principle permitting a departure. Indeed, the 1989 Guidelines encourage a departure where "public ... safety was significantly endangered." U.S.S.G. § 5K2.14; *see, e.g., United States v. Rodriguez–Castro*, 908 F.2d 438, 441 (9th Cir.1990); *United States v. Chiarelli*, 898 F.2d 373, 380–81 (3d Cir.1990) (both upholding departures for similar conduct under § 5K2.14).

Doe points out that the 1990 Guidelines, not applicable to his case, added a new provision *specifically* requiring a two-level upward adjustment in such circumstances. *See* U.S.S.G. § 3C1.2 (1990). He seems to argue that the new guideline should apply to him, in which case the court should have increased his sentence through the adjustment and not through departure. We are not certain why Doe thinks applying a two-level upward adjustment (under the 1990 Guidelines) rather than departing upward two levels (as the district court did and the 1989 Guidelines permit) would have made a difference to his sentence. But, regardless, the district court took the right approach. To apply the new 1990 Guidelines to Doe's case, in this respect, would have *required* a two-level increase. For that reason, they would seem to have heightened the severity of the applicable law, which at the time simply *permitted* such an increase through a departure. Hence, ex post facto principles would have led the district court to the earlier 1989 version, which put the matter in its departure-related discretion. *Cf. Cousens*, 942 F.2d at 801 n. 1.

## IV

### *The Extent of Departure*

█ The district court departed from a Guideline sentence range of 21 to 27 months. It imposed instead a sentence of 72 months. The relevant statute instructs us to review the length of that sentence for its "reasonableness," 18 U.S.C. § 3742(e)(3); in doing so we show "full awareness of, and respect for" the sentencing court's "superior 'feel' for the case." *Rivera*, 994 F.2d at 950 (quoting *Diaz–Villafane*, 874 F.2d at 50).

The district court determined the *extent* of the departure as follows:

1) The court began with the Guideline score, offense level 12, criminal history category IV, which produced a range of 21 to 27 months.

2) The court decided that Doe's reckless conduct fleeing arrest warranted a two-level increase in the offense level, producing a range of 27 to 33 months. *Cf.* U.S.S.G. § 3C1.2 (1990).

3) The court decided that Doe's criminal history warranted, at least, a two-category criminal history score departure, placing Doe in criminal history category VI, instead of IV, and (taken together with the reckless conduct departure) bringing the court to level 14, category VI, with a range of 37 to 46 months imprisonment.

4) Finally, the district court found this range "too low ... because of the criminal history of this defendant." The court was struck by Doe's

> virtually unbroken chain of assaultive behavior, consistently committed while under either supervision or the generalized control of the court, starting with the juvenile

encounters with law enforcement and continuing to the present offense.

The court added that the

criminal history category does not reflect the seriousness of his offenses nor the likelihood—which I consider a virtual certainty—that once this defendant is returned to the street he will commit future crimes,

and that

[t]his is a defendant who has been permitted to engage in such plea or diversionary or ameliorative sentencing arrangements because this system has assumed that more serious matters await him. The classic in this circumstance is the [state court] disposition of the defendant for assault and battery with a dangerous weapon [suspended sentence] shortly after his bank robbery conviction [in the federal court].

The record provides sufficient support for these factual conclusions.

The court then followed the method for calculating the kind of departure that the Guidelines recommend "on occasion" for a defendant with an "egregious, serious criminal record," U.S.S.G. § 4A1.3 (p.s.). Starting at level 14, category VI, the court in effect moved vertically down the sentencing table until it found a range it believed appropriate. The court selected a 72 month (i.e., six year) sentence, which is analogous to a five-level departure to level 19 (at category VI). U.S.S.G. ch. 5, pt. A (Table) (level 19 at category VI sets range of 63–78 months). It noted the Commission's later decision to increase a felon in possession's offense level by eight for one prior violent felony, *see* U.S.S.G. § 2K2.1(a)(4), (7) (1991), and it pointed out that its resulting sentence was less severe than the sentence would have been if the Commission's later Guidelines had applied.

We can find nothing unreasonable about the extent of the district court's departure. Doe's prior criminal record does seem "egregious." The fact that his most recent violent crime, armed bank robbery, involved guns seems particularly relevant in light of his present gun-related crime. His record also reveals, in addition to the two serious crimes counted in the criminal history score, four other serious crimes; indeed, as the government pointed out at oral argument, it reveals Doe's virtually continuous commission of crimes, interrupted only by periods of incarceration.

Moreover, the Guidelines themselves seem to see in such circumstances the basis for a significant departure. Commenting upon criminal history departures, they envision as a candidate for departure

a defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past.... This may be particularly true in the case of younger defendants ... who are more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of recidivism than older defendants.

U.S.S.G. § 4A1.3, comment. (backg'd).

We cannot say that the district court went beyond the "leeway" the law provides, *Rivera,* 994 F.2d at 950 (citing *Diaz–Villafane,* 874 F.2d at 49–50), when it departed upward by five levels. The defendant's prior crimes were extensive, violent, and (like the present crime) involved guns. The addition of two levels for the defendant's arrest behavior also seems reasonable. Thus, we cannot find the extent of the departure, taken as a whole, "unreasonable." 18 U.S.C. § 3742(e)(3).

We note Doe's argument that the court, in departing, simply applied the Commission's more severe 1991 Guidelines to him, in violation of the Constitution's ex post facto clause. *See Cousens,* 942 F.2d at 801 n. 1. After reviewing the district court's statements, however, we are convinced that Doe misinterprets what that court did. The court fully understood the ex post facto problem. It wrote explicitly that it used the later guidelines not to provide a *reason* for departing, but rather as an analogy, through reference to the Commission's informed judgment, that its grounds and extent of departure were reasonable. *See United States v. Harotunian,* 920 F.2d 1040, 1046 (1st Cir.1990) (court may look to subsequent Guidelines amendments "for partial guidance to corroborate its belief" that particular conduct "furnished a proper ground for a discretionary departure,

50

and as a means of comparison in fixing the departure's extent"); *supra* pp. 44–47 (departure based on prior bank robbery and on juvenile conduct is permissible). The court pointed out that, although it used the new guideline to provide an analogy to determine how far down the sentencing table's column VI it should move, its five-level upward departure was significantly less than the eight-level increase that the 1991 Guidelines specify where a "felon in possession" has *one* prior violent felony conviction. U.S.S.G. § 2K2.1(a)(4), (7) (1991). Its final six year sentence is one year less than the minimum sentence at the guideline range that the 1991 Guidelines would have made applicable. The fact that the Commission *also* (in a later Guideline version) decided that certain conduct warrants a higher sentence does not bar the court from finding, prior to the Commission's action, that the conduct provides a basis for an upward departure. *See Harotunian,* 920 F.2d at 1046.

Finally, Doe argues that the district court increased his sentence because it disagreed with our view that the "felon in possession" crime is not a "violent felony" that falls within the "mandatory minimum" sentencing statute and would (in this case) lead to a fifteen year sentence. *See Doe,* 960 F.2d at 224–26. The district court did mention the fact that other circuits have decided the matter differently. But we find nothing in the district court's statements that warrant Doe's conclusion. Rather, the reasons that led the court to depart are the reasons it mentioned and those we have discussed in this opinion. We find no evidence of an intent to subvert this court's earlier decision.

For these reasons, the defendant's sentence is

*Affirmed.*